## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **7928 SHEPHERD, LLC** | § | |
| **d/b/a PASSION CABARET** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Case No._____** |
| | § | |
| **THE CITY OF HOUSTON** | § | |
| **Defendant.** | § | |

## COMPLAINT

COMES NOW, 7928 SHEPHERD, LLC d/b/a PASSION CABARET ("Plaintiff" or "Passion") in the above-entitled cause, and files this Complaint against the City of Houston ("Defendant" or "City"), and in support states as follows:

## SUMMARY OF THE ACTION

1.     At its core, this case is about fairness and equal application of the law.  It is incontrovertible that the actions taken by the City against the Plaintiff, Passion Cabaret—a lawful business formed to operate an adult entertainment style gentlemen's club—are unwarranted, unfair, and in direct violation of numerous fundamental laws and public policies, including the freedom to conduct business on a fair and equitable playing field.  In violation of these paramount laws, the City has unlawfully permitted only a select handful of adult entertainment establishments the right to operate their businesses in complete immunity from certain City ordinances.  This fact causes direct and immediate harm to Plaintiff Passion.

2.     In or about November 2013, as a result of prior litigation between the City and multiple adult entertainment establishments regarding the City's laws, the City and approximately

sixteen adult entertainment establishments ("the Clubs") entered into a settlement agreement ("the Agreement"). This Agreement became effective on January 1, 2014.

3.      The Agreement between the City and the Clubs provides for the suspension of enforcement of provisions of Chapter 28 of the Houston Code of Ordinances regarding sexually-oriented businesses, solely with respect to the select group of Clubs. These ordinances would otherwise be enforceable. In return for the Clubs' immunity from the ordinances, the Clubs annually pay the City nearly $100,000 in addition to a share of their liquor sales. This scheme amounts to commercial bribery and violates both state and federal law.

4.      Fundamentally, the Agreement is unlawful, unfair, and anticompetitive in nature. The result is that the City's laws are selectively enforced against Passion, while the select Clubs are simultaneously exempt from the *exact* same laws. Thus, the Agreement violates the Sherman Act, as it amounts to an anticompetitive restraint of trade, and the Clayton Act, and the Robinson-Patman Act. The Agreement also violates the United States Constitution, as it denies the due process and equal protection clauses by enforcing the law only against the establishments that are not parties to the Agreement.

5.      As a specific and immediate result of the Agreement, Passion's business has suffered and will continue to suffer greatly, all while Passion's direct competitors generate business and financial gain from otherwise unlawful activity. For example, the Agreement allows for the select Clubs, which are direct competitors of Passion in the same market, to offer topless lap dances without regard to the City's "no touch" and "three feet" rules. These types of dances are otherwise in clear violation of the City's laws. Additionally, the Agreement exempts the Clubs from paying the otherwise mandatory five-dollar customer tax imposed by City law. As such, this is an unfair and unlawful application of the City's laws.

2

6.     Moreover, although the Agreement appears to disallow the operation of VIP rooms for private dances, which are blatantly in violation of city law, Clubs in the Agreement have been permitted to offer such services free from punishment.

7.     Therefore, Passion has and will continue to lose business as a result of this unlawful scheme and could potentially become unsustainable.   Passion hereby seeks injunctive and declaratory relief, as well as monetary damages, both actual and treble, costs, and attorney's fees.

## PARTIES

8.     Plaintiff is a Texas Limited Liability Company with its principal place of business located in Harris County, Texas.

9.     Defendant is the municipality of the City of Houston in the State of Texas.

## JURISDICTION AND VENUE

10.     This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331.  This Court has jurisdiction over the federal antitrust claims herein under 15 U.S.C. §§1 and 15(a).  This Court also has jurisdiction in accordance with 28 U.S.C. §2201 and Federal Rule of Civil Procedure 57 to issue declaratory relief.  This Court also has original jurisdiction under 28 U.S.C. §1343(a)(3), as some causes of action herein are asserted under 42 U.S.C. §1983 for the reparation of deprivation under color of state law, of any right, privilege, or immunity protected by the Constitution of the United States or by any Act of Congress which provides for equal rights of citizens or persons within the jurisdiction of the United States.  This Court may also exercise supplemental jurisdiction over any state law claims herein under 28 U.S.C. §1367(a), as those claims "are so related to" the claims for which this Court has original jurisdiction "that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. §1367(a).

11.     Venue is also proper in this Court, as Defendant resides in the State of Texas and is found in this judicial district. *See* 28 U.S.C. §1391(b).  The events giving rise to the claims and causes of action herein also occurred in this judicial district. *Id.*

## FACTUAL ALLEGATIONS

### A.     Dispute Between the Clubs and the City, and the Resulting Settlement Agreement

12.     Upon information and belief, the City and certain Clubs were involved in a dispute regarding the application of certain City ordinances, relating to the provision of adult entertainment ("Adult Entertainment").  The relevant ordinances at issue are located in Chapter 28 of the Houston Code of Ordinances.  Specifically, Article VIII §28-258(a) makes it unlawful for any entertainers to touch customers or customers' clothing while entertaining.  Subsection (b) of Article VIII §28-258 makes it unlawful for an entertainer to approach a customer at a distance of less than three feet while entertaining.

13.     Additionally, other key ordinances relating to Adult Entertainment businesses include: (1) Article XI §28-322 imposes a $5 tax on all customers who enter adult entertainment establishments; (2) Article III §28-125 sets forth requirements for the distance that adult entertainment establishments must be from certain community buildings (1500 and 1000 feet distances); and (3) Article III §28-122 requires a permit for the enterprise for the adult entertainment establishment, and Article XIII §28-253 requires managers and entertainers to have permits.

14.     On or about November 27, 2013, the City entered into a settlement Agreement with the Clubs, in order to resolve the outstanding and ongoing litigation.  The Agreement became effective on January 1, 2014.  Fantasy Plaza recently settled its case with the City and entered into

a similar agreement.[1] *See* Exhibit A, attached hereto.  The Agreement provides that payments from the Clubs to the City go into an account named the "Human Trafficking Abatement Fund."

15.     Upon information and belief, the Agreement between the City and the Clubs provides for the suspension of the above-listed enforcement of provisions of Chapter 28 of the Houston Code of Ordinances regarding sexually-oriented businesses with respect to the specific group of Clubs that signed onto the Agreement.  These City laws would otherwise be fully enforceable against the Clubs.  In exchange for the Clubs' immunity to these ordinances, the Clubs pay the City approximately $100,000 dollars per year, as well as an annual percentage of their liquor sales.  This scheme amounts to commercial bribery and violates both state and federal law. *See* Texas Penal Code §36.02(a) and the Robinson-Patman Act, 15 U.S.C. §13.

**B.   Direct Harm and Failure of Due Process to Passion**

16.     Passion is a business entity formed to operate an adult-entertainment type of establishment and that is in direct competition with the Clubs that are unfair beneficiaries of the exemptions included in the Agreement.   Passion is not allowed to join the Agreement.  As such, Passion has been and will continue to be significantly harmed because its competitors are not subject to enforcement of the City ordinances.  Among other things, this unlawful arrangement between the City and the Clubs will cause harm to Passion's finances, customer reputation, and good will in its industry.  Accordingly, Passion is hereby forced to bring this suit.

17.     The Agreement is unlawful, unfair, and anticompetitive in nature.  The result is that the laws are selectively enforced against Passion and the other clubs that are not parties to the Agreement—all while the select sixteen Clubs are exempt from those very same laws.  Thus, the Agreement amounts to an anticompetitive restraint of trade.  The Agreement also violates the

---

[1] Upon information and belief, additional clubs have also been allowed to participate in the Agreement. Accordingly, the number of participating Clubs may be higher than stated herein.

United States Constitution due process and equal protection clauses by enforcing the laws only against those clubs that are not parties to the Agreement.

18.     As a result of the Agreement, Passion's business will suffer greatly.  The Clubs party to the Agreement are direct competitors of Passion.  Only those specific Clubs are free to offer topless lap dances wholly without regard to the City's "no touch" and "three feet" rules.  The Agreement also exempts the Clubs from paying the five-dollar customer tax imposed by City law. Although the Agreement appears to disallow the operation of VIP rooms for private dances, which are blatantly in violation of city law, Clubs party to the Agreement have been permitted to offer such services free from punishment.  Therefore, Passion will to lose a considerable amount of business as a result of this unlawful and one-sided scheme and could potentially become unsustainable, because they cannot offer the same services under the same rules as the Clubs party to the Agreement.

19.     Passion hereby seeks monetary damages, both actual and treble, costs, and attorney's fees, as well as injunctive relief to stop the irreparable harm to which they have been subject as a result of the Agreement.  Passion also hereby seek declaratory relief as to the Agreement as it amounts to an unlawful hindrance in restraint of trade and an illegal commercial bribery system.

## CAUSES OF ACTION

20.     Passion hereby realleges and incorporates by reference herein the allegations set forth in the preceding paragraphs of this Complaint.

### COUNT I:
### CONTRACT, COMBINATION, AND CONSPIRACY IN RESTRAINT OF TRADE IN VIOLATION OF 15 U.S.C. §1

21.     15 U.S.C. §1 makes "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations […] illegal." 15 U.S.C. §1.  The Agreement between the City and the Clubs is a contract and conspiracy in restraint of trade or commerce.  The Agreement permits only specifically selected Clubs to offer topless lap dancing and prohibits their competitors such as Passion from offering the same services.  Moreover, Passion and other non-party clubs have higher costs than the Clubs, because only the Clubs party to the Agreement are exempt from the $5 per customer tax.  The Agreement prevents fair competition in the adult entertainment market, putting Passion, a non-party club, at a severe competitive disadvantage.

22.     In return for their immunity to the city ordinances otherwise applicable to sexually oriented businesses, the Clubs agreed to each pay nearly $100,000 annually to the City, in addition to paying the City a 1.1% share of each Club's liquor sales annually.  The Clubs jointly agreed to provide payment, thus ensuring that the City received at least $800,000 per year.

23.     The Clubs and the City conspired to exclude businesses like Passion, and the other non-party clubs from the Agreement.  The Agreement provided a lucrative incentive to the Clubs, since the Clubs would have the exclusive right to offer topless lap dancing services, making them more profitable than their direct competitors like Passion.  The Agreement also provided a lucrative reason for the City to contract with the Clubs.  Per the Agreement, there is a great financial benefit conferred upon the City from the annual fee paid by the Clubs as well as the City's share of the Clubs' alcohol sales.

24.     The Agreement, which excludes Passion, and the other non-party clubs from the benefits conferred upon the Clubs party to the Agreement, is an unlawful restraint on trade and violates federal antitrust law.  It also amounts to a scheme of commercial bribery.  The purpose of

the Agreement is to reduce competition by allowing only a select group of clubs to offer select profitable services and forego the per customer tax, putting that group of Clubs at a dominant competitive advantage compared to Passion, and the other non-party clubs in the Adult Entertainment market in Houston. This hurts consumers, causes prices to increase, quality to decrease, and may ultimately cause Passion, and the other non-party clubs' businesses to fail.

25.     The City's motive for entering into the Agreement was to make a large profit in exchange for giving the select Clubs a license exempting them from City ordinances. This unduly burdens interstate commerce for live Adult Entertainment businesses and unduly burdens competition in Houston's live Adult Entertainment market for no legitimate public purpose. Houston is a major tourist and business destination, and customers and potential customers of Passion, and other live adult entertainment clubs are often in Houston as a result of their traveling in interstate commerce. Thus, the Agreement has a substantial adverse effect on interstate commerce. Some of the entertainers even travel in interstate commerce throughout the year, working at different adult entertainment establishments across the country.

26.     Passion has suffered and will continue to suffer irreparable harm as a result of the Agreement.

## COUNT II:
## HORIZONTAL GROUP BOYCOTT IN VIOLATION OF SHERMAN ANTITRUST ACT

27.     The Clubs party to the Agreement are horizontal competitors of Passion. The Agreement is illegal and in violation of the Sherman Antitrust Act, 15 U.S.C. §1, as a horizontal agreement among and between the Clubs and the City. The Agreement is a group boycott by the City and the Clubs, excluding Passion, and other non-party clubs from the competitive market.

28.     The Agreement is a per se unlawful group boycott. The City and the Clubs effectively control access to the live Adult Entertainment market by exempting the Clubs from

8

City ordinances, which diminish competition in the relevant market, putting the Clubs in the dominant position in the live adult entertainment market.  The Agreement bestows upon the Clubs the exclusive right to offer topless lap dances and exempts them from the per person tax, which diminishes Passion's, and non-party clubs' ability to effectively compete.  Finally, the Agreement has no legitimate business purpose for doing so. *See Hahn v. Oregon Physicians' Service*, 868 F.2d 1022, 1030 (9th Cir. 1988) citing *Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*, 472 U.S. 284, 285 (U.S. 1985).  Moreover, "[t]he per se rule is invoked when a challenged activity facially appears to be one that would always or almost always tend to restrict competition and decrease output." *Hahn v. Oregon Physicians' Service*, 868 F.2d at 1024.  As explained more fully above, the Agreement absolutely restricts and hinders competition and decreases output.

29.     The City and the Clubs conspired together to exclude Passion, and the other non-party clubs from the Agreement which would exempt them from the City ordinances prohibiting topless lap dancing and requiring a five dollar per customer fee.  This effectively denied Passion, and the non-party clubs access to the input necessary for them to viably compete and raised their costs relative to the Clubs.

30.     In the alternative, the Agreement constitutes a horizontal group boycott that violates the doctrine of the rule of reason.  As set forth more fully above, the Agreement between and among the City and the Clubs is unlawful, as it is an unreasonable restraint on trade.

31.     The City possesses the sole monopoly authority to exempt clubs from City law, and it utilized this authority to elevate the Clubs to a prime position in the live Adult Entertainment market.

**COUNT III:**

9

## SUBSTANTIALLY LESSENING COMPETITION IN VIOLATION OF THE CLAYTON ACT, 15 U.S.C. §14

32.     The Agreement violates Section 3 of the Clayton Act, 15 U.S.C. §14 by substantially lessening competition.

33.     By allowing only sixteen select Clubs, which represent less than half (44%) of the adult entertainment establishments in Houston, to join the Agreement with the City, the majority of Adult Entertainment establishments (56%) were excluded.

34.     Permitting only sixteen Clubs to be exempted from the City ordinances substantially decreased competition in the relevant market by limiting the number of establishments that can offer live topless lap dances and reducing Passion's, and the non-party clubs' ability to compete.

## COUNT IV:
## UNLAWFUL EXCLUSIVE DEALING, PURSUANT TO 15 U.S.C. §1

35.     The Agreement is unlawful on grounds of unreasonable exclusive dealing pursuant to 15 U.S.C. §1, as the Agreement permitted exclusively the Clubs to be exempt from the City ordinances, and not Passion, and other clubs similarly situated.

36.     The expressly exclusionary Agreement substantially decreased competition in the relevant market by limiting the number of establishments that can offer live topless lap dances to select Clubs and reducing Passion's, and the non-party clubs' ability to compete in the relevant market.

## COUNT V:
## ESSENTIAL FACILITIES CLAIM, VIOLATION OF THE SHERMAN ACT

37.     The Agreement violates the essential facilities doctrine under the Sherman Act, 15 U.S.C. §2.  The City is a monopolist with the monopoly power to determine the Clubs which could partake in the Agreement and therefore the exemption from City ordinances.

38.     The facility—the exemption from the relevant laws—is essential for the ability to viably compete in the relevant market.

39.     The City controls who is exempt from its laws, and the City excluded Passion from the Agreement and thus the exemption.

40.     It would have been practicable to permit Passion to join the Agreement. *See Dealer Computer Servs. v. Ford Motor Co*., LEXIS 23327, *9 (U.S. Dist Ct. S. D. TX—Houston Division 2006).

41.     The City has effectively excluded Passion and the other non-party clubs from its Agreement with the original sixteen Clubs, and subsequently denied Passion's request to enter into the Agreement.

## COUNT VI:
## VIOLATION OF ROBINSON-PATMAN ACT, 15 U.S.C. §13(c)

42.     The Agreement violates the Robinson-Patman Act, 15 U.S.C. §13(c), as it constitutes a commercial bribery scheme.

43.     The Agreement provides for the Clubs paying the City a share of their alcohol sales in exchange for immunity from City ordinances.  This is an improper and unlawful reason for the City to receive money, as it does not constitute "services rendered in connection with the sale or purchase of goods, wares, or merchandise."  The City has effectively sold the Clubs licenses to violate City law.

44.     The Agreement will devastate Passion's business, as they are not exempt from the 3-foot and no touch rules and thus cannot offer the same services that their direct competitors party to the Agreement may offer.  These services are highly sought after by customers, and thus Passion's ability to compete in the live Adult Entertainment market has been largely diminished.

## COUNT VII:

## VIOLATION OF EQUAL PROTECTION CLAUSE

45.     The Agreement between the City and the Clubs is a policy of the City.  It exempts certain select Clubs from city ordinances in exchange for money, but prohibits other direct competitor clubs such as Passion from the same exemption.  The City has deprived Passion of its rights under the equal protection clause of the Fourteenth Amendment to the United States Constitution and civil rights statute 42 U.S.C. §1983.

46.     The City has no compelling, important, legitimate, or rational governmental interest in exempting some Clubs from City laws, but denying the same exemption to others.  Furthermore, the Agreement is unconstitutional, as it unduly burdens Passion, and other non-party clubs and the restraint is not rationally related to any legitimate governmental interest, nor is it necessary or narrowly tailored.

47.     The City's refusal to allow Passion, and other non-party clubs to join the Agreement is due to its aversion and hostility toward Passion, and other non-party clubs and has no legitimate reason.

## COUNT VIII:
## VIOLATION OF CONSTITUTIONAL DUE PROCESS

48.     The Agreement violates both substantive and procedural due process under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

49.     The Agreement between the City and the Clubs constitutes a City policy.   It exempts certain select Clubs from City ordinances in exchange for money while prohibiting other direct competitor clubs such as Passion from the same exemption.

50.     The licensing scheme created by the Agreement constitutes a deprivation of procedural due process rights for Passion, as non-parties to the Agreement.  Passion was deprived of its rights without an evidentiary hearing.

51.    The City has no compelling, important, legitimate, or rational governmental interest in denying procedural due process protections to Passion in refusing to grant Passion the same exemption as the Clubs.  The Agreement unduly burdens Passion, and other non-party clubs and the restraint is not rationally related to any legitimate governmental interest, nor is it necessary or narrowly tailored.

52.    With respect to substantive due process, the Agreement and its licensing scheme allows a select group of Adult Entertainment establishments to be exempt from City law in exchange for payment, but for no legitimate reason refuses to grant the same right to other Adult Entertainment establishments in the same geographic location, such as Passion.

53.    The City's refusal to include Passion in its Agreement constitutes an abuse of power by a government.  The City even admitted that it meant to terminate the business of the non-party "rogue" clubs in a comment made by a former City Attorney for no legitimate reason except for animosity towards those clubs.

54.    The arbitrary and capricious manner in which the Agreement has implemented and enforced its laws is unconstitutional and an unlawful licensing scheme that does not treat similarly situated businesses equally.

### COUNT IX:
### APPLICATION FOR INJUNCTIVE RELIEF

55.    Passion seeks injunctive relief, costs, and attorney's fees pursuant to 15 U.S.C. §26, since monetary damages alone are not sufficient to cure the harm to Passion's businesses.

56.    Passion requires injunctive relief, including a temporary restraining order, a preliminary injunction, and a permanent injunction, to prevent the City from causing and continuing to cause immediate and irreparable injury to Passion by enforcing the City's ordinances in an unequal and unlawful manner.

57.     Passion has a substantial likelihood of success on the merits of its causes of action and no adequate remedy at law.

58.     It is essential for the Court to immediately restrain the City from continuing with the conduct described above.

59.     Passion requests a Temporary Restraining Order under Federal Rule of Civil Procedure 56(b), as it will suffer irreparable harm if enforcement of the Agreement is not restrained.  Expiration or termination of the Agreement is not foreseeable and thus Passion will continue to suffer irreparable harm to its business as long as the Agreement continues to be enforced.  Thus, harm to Passion is actual and imminent.  Passion has no other sufficient legal recourse or remedy for the harm to its good will, reputation, current and future profits, rights, and prospective customers are not easily quantifiable in money damages.  Furthermore, money damages alone would not provide complete recourse.  Permanent irreparable harm would befall Passion if the Agreement remains in effect.  Passion respectfully asks that the City be restrained from engaging in the regulation of sexually oriented businesses as per the terms of the Agreement and exempting the Clubs from otherwise applicable city ordinances.  For this, Passion is willing to post a bond.

60.     Likewise, Passion requests a permanent injunction prohibiting the City from engaging in the regulation of sexually oriented businesses as per the terms of the Agreement and exempting the sixteen Clubs from otherwise applicable city ordinances.

**COUNT X:**
**DECLARATORY JUDGMENT**

61.     Under 28 U.S.C. §2201 and Federal Rule of Civil Procedure 57, Passion seeks a declaratory judgment from this Court that the Agreement hinders competition and illegally restrains trade in violation of 15 U.S.C. §§1 and 2, violates 15 U.S.C. 13(c) and Texas Penal Code

14

§36.02(a) as it amounts to an illegal scheme of commercial bribery, and it (as well as the denial of Passion's request to also be exempted from the city ordinances) constitutes a violation of Passion's due process (procedural and substantive) and equal protection rights under the 14th Amendment to the United States Constitution and 42 U.S.C. §1983.

62.     The arbitrary and capricious manner in which the Agreement has implemented and enforced its laws is unconstitutional and an unlawful licensing scheme that does not treat similarly situated businesses equally.

## DAMAGES AND OTHER RELIEF

63.     Passion hereby realleges and incorporates by reference herein the allegations set forth in the preceding paragraphs of this Complaint.

64.     Passion, upon information and belief, estimates that the total actual damages caused by the City's unlawful conduct described herein will exceed $100,000 dollars, inclusive of lost profits and lost business opportunities.

65.     Passion is also entitled to treble damages as well as reasonable attorney's fees, pursuant to 15 U.S.C. §15.

## CONDITIONS PRECEDENT

66.     Passion hereby confirms that all conditions precedent to the filing of this lawsuit have been fulfilled or have occurred.

## PRAYER

7928 Shepherd, LLC d/b/a Passion Cabaret, Plaintiff herein, respectfully requests that the City be cited to answer and that judgment be entered against it and in favor of Passion for actual and treble damages, any special and consequential damages, declaratory relief, temporary and permanent injunctive relief, prejudgment and postjudgment interest, costs, attorney's fees, and any

and all such other and further relief to which Passion may be justly entitled to both in law or in equity.

Respectfully submitted,

BURLESON & CRAIG PLLC

/s/ *Clyde W. Burleson*

_____

Clyde Burleson
Attorney-in-charge
SBN: 00796278
SDID: 754365
clyde@burlesoncraig.com
Burleson & Craig, P.L.L.C.
1533 W. Alabama
Houston, Texas 77006
Telephone: (713) 526-2226
Facsimile: (713) 526-3787

**ATTORNEY FOR PLAINTIFF**
**7928 SHEPHERD, LLC d/b/a**
**PASSION CABARET**